UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LAWRENCE C.,[1]

                               Plaintiff,                   **DECISION AND ORDER**

v.                                                1:24-cv-1122-JJM

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

_____

Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that he was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [12, 15].[2] The parties have consented to my jurisdiction [22]. Having reviewed their submissions [12, 15], this action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

**BACKGROUND**

The parties' familiarity with the 505-page administrative record [5] is presumed. On November 5, 2021, plaintiff filed an application for supplemental security income. Administrative Record [5] at 25. Plaintiff alleged disabling conditions arising from his mental health, anxiety, high blood pressure, post-traumatic stress disorder ("PTSD"), and a limited range

---

[1]    In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020, in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]    Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

of motion in his hip and knee. Id. at 93. Plaintiff's claim was denied initially and again on reconsideration. Id. at 25. Plaintiff requested a hearing. Id.

### A.    The Hearing

On July 11, 2023, Administrative Law Judge ("ALJ") Kim Griswold conducted a telephonic hearing. [5] at 45-91. Plaintiff was represented by an attorney. Id. At the hearing, plaintiff testified that, during a previous period of incarceration, he was attacked by corrections officers and "beaten real bad". Id. at 53. Since then, he has suffered from sciatica and sporadic pain "up" his back and down his right leg. Id. His back pain was also affected by his weight, which ranged from 400 to 440 pounds or more. Id. at 55-56. He testified that "I can't stand up for longer than like, ten minutes without the pain shooting up and down my back". Id. at 57.

Plaintiff lived with his mother. Id. He could wash dishes, prepare food, clean, and do laundry for as long as he was able to stand. Id. at 57-58. He could not go grocery shopping alone due to anxiety. Id. at 59. His medications included water pills and hydrochlorothiazide for his high blood pressure, a muscle relaxer for his back, and Klonopin and Ambien for anxiety and sleep. Id. at 59. He used a cane when walking to take pressure off his right leg. Id. at 61. He was given the cane in prison. Id. at 61-62. He testified that he would be willing to work if it were not for his mental health issues and sciatica. Id. at 68.

A vocational expert testified that plaintiff had past relevant work, but that a person with the limitations described by ALJ Griswold could not perform such work. Id. at 70-72. However, he testified that there were jobs that existed in the national economy that such a person could perform. Id. at 72-87. He testified that the need to elevate one's legs or to lie down at work would be preclusive of all competitive work. Id. at 88-89.

At the conclusion of the hearing, plaintiff's hearing attorney stated that the record could be closed. Id. at 90.

**B.    ALJ Griswold's Decision**

On December 22, 2023, ALJ Griswold issued a Notice of Decision denying plaintiff's claim. Id. at 25-39. She found that plaintiff had the following severe impairments: lumbar degenerative changes, obesity, depressive disorder, anxiety disorder, PTSD, and substance use disorder for cocaine and cannabis. Id. at 27. She found that plaintiff would have moderate limitations in all four broad areas of mental functioning. Id. at 29-30.

ALJ Griswold found that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR §416.967(b), except that he could stand and walk for four out of eight hours in a workday subject to certain postural and environmental restrictions. Id. at 30. She further found that plaintiff could understand, remember, and carry out simple tasks throughout an ordinary workday and workweek with normal breaks; respond appropriately to coworkers without teamwork or collaboration; respond appropriately to supervisory directions and supervisory feedback for simple work-related matters; adapt to simple changes in a routine work setting; but could not perform externally paced conveyor belt work or interact with the general public. Id. at 30-31.

ALJ Griswold found that, while plaintiff would be unable to perform any past relevant work, there were jobs that existed in significant numbers in the national economy that he could perform. Id. at 37-38. Accordingly, she found that plaintiff was not disabled. Id. at 38-39. The Appeals Council denied plaintiff's request for review on September 19, 2024. Id. at 1.

**C.    Relevant Medical Evidence**

On January 20, 2022, plaintiff saw his primary care provider, Jennifer Earsing, ANP, for a one-month follow up appointment. Id. at 383-85. Plaintiff had previously slipped on ice, and reported experiencing painful flares of sciatica on his left side. Id. at 383. Ms. Earsing prescribed muscle relaxers and recommended physical therapy. Id. at 384.

On February 14, 2022, Susan Santarpia, Ph.D., performed a consultative psychiatric evaluation of plaintiff. Id. at 395-98. Plaintiff denied having any formal psychiatric diagnoses, but reported anxiety caused by claustrophobia and crowds as well as trouble sleeping. Id. at 395. He reported regularly using cocaine and marijuana. Id. On mental status exam, Dr. Santarpia found plaintiff to have a full range of affect, euthymic mood, intact memory skills, attention, and concentration, with fair insight and judgment and average cognitive functioning. Id. at 396-97. Dr. Santarpia diagnosed plaintiff with unspecified anxiety disorder, which was possibly induced or exacerbated by substance use. Id. at 397. She opined that plaintiff had mild to moderate impairment in regulating emotion, controlling behavior, and maintaining well-being. Id. at 398. ALJ Griswold found Dr. Santarpia's opinion partially persuasive, as she felt the "evidence as a whole" supported greater limitations. Id. at 32.

Jeffery Grace, M.D, treated plaintiff on February 21, 2022, March 7, 2022, June 8, 2022, August 17, 2022, November 7, 2022, November 23, 2022, January 18, 2023, February 8, 2023, March 24, 2023, and April 5, 2023. Id. at 426-85, 498-505. Plaintiff reported experiencing symptoms of depression, anxiety, and suicidal ideation. Id. at 426. He reported using cannabis multiple times per day and using cocaine once. Id. at 426-27. Plaintiff's mental status exam was unremarkable. Id. at 428. Dr. Grace assessed plaintiff with anxiety, depression,

and insomnia. Id. at 430. He prescribed Klonopin for anxiety, Ambien for sleep, and Remeron for depression, and Prazosin for PTSD. Id. at 442, 450, 460.

On March 2, 2022, Nikita Dave, M.D. performed a consultative medical examination of plaintiff. Id. at 400-03. Plaintiff reported low back pain resulting from a 2014 altercation with corrections officers. Id. at 400. He also reported having a stroke in 2010, which caused weakness in his left leg. Id. He could perform household tasks without assistance. Id. at 400-01. Plaintiff was morbidly obese and walked with a limp. Id. at 401. He would use a cane, though his gait was "slightly improved" without it. Id. Dr. Dave opined the cane was not medically necessary. Id. On exam, plaintiff's lumbar spine extension was severely limited and a straight leg raise (SLR) test was positive at 45 degrees on the left leg. Id. at 402. Dr. Dave opined that plaintiff would have moderate limitations for prolonged standing, walking, heavy lifting, and carrying due to low back pain and left lower extremity pain and/or weakness, and that he should avoid ladders due to left lower extremity subjective fatigue. Id. at 403. ALJ Griswold found Dr. Dave's opinion to be persuasive, as being supported by her examination findings and consistent with the claimant's treatment history. Id. at 33.

Meggan Daunce, CASAC, LMHC, submitted two "Mental Impairment Questionnaires" dated February 14, 2023. Id. at 486-90. She indicated that she had been treating plaintiff for PTSD on a monthly basis since February 28, 2022. Id. at 486. She opined that plaintiff would be unable to sustain the mental requirements for skilled work, adequately maintain attention and concentration, or reliably attend work on time. Id. at 486-87. Plaintiff would be absent from work three times per month due to mental health issues and would have marked limitations in his abilities to: interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. Id. at 487-88. ALJ Griswold found Ms. Daunce's opinion

unpersuasive, considering it unsupported by the medical evidence of record and treatment history, and inconsistent with plaintiff's conservative course of treatment, lack of serious symptoms, and Dr. Santarpia's report. Id. at 35.

State Agency consulting physicians, Dr. Lawrence and Dr. Brauer, both reviewed the medical evidence and concluded that plaintiff retained the capacity to perform light work with only environmental limitations. Id. at 101-02, 120. ALJ Griswold found these opinions partially persuasive, as she felt that certain standing, postural, and environmental limitations were also warranted. Id. at 36.

State agency psychologists Dr. Roy-Petrick and Dr. Dekeon reviewed the psychological evidence and concluded that plaintiff had no severe psychiatric impairment, no limitations on his ability to understand, remember, or apply information or concentrate, persist, or maintain pace, and mild limitations on his ability to interact with others and to adapt or manage himself. Id. at 99, 117. ALJ Griswold found these opinions unpersuasive as they were made without access to Dr. Grace's treatment records, which reflected severe psychiatric impairments. Id. at 37.

**ANALYSIS**

Plaintiff argues that remand is required because: (1) there is "new and material" evidence; (2) ALJ Griswold improperly employed her "lay" judgment in assessing plaintiff's standing limitations; (3) ALJ Griswold improperly evaluated Ms. Daunce's mental health evaluations; and (4) ALJ Griswold improperly employed her "lay" judgment in assessing plaintiff's mental limitations. Plaintiff's Memorandum of Law [12-1] at 13-37.

**A.    Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . .  the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator evaluating a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.    Is there good cause to remand for "new and material" evidence?**

"The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and *that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding*". 42 U.S.C. §405(g) (emphasis added). "Thus, an appellant must show that the proffered evidence is (1) 'new' and not merely cumulative of what is already in the record . . . (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and . . . a reasonable possibility that the new evidence would have

influenced the Secretary to decide claimant's application differently[, and] (3) [that there is]

good cause for [his] failure to present the evidence earlier." Tirado v. Bowen, 842 F.2d 595, 597

(2d Cir. 1988) (citations omitted); *see* Hairston-scott v. Commissioner of Social Security, 2021

WL 3777581, *2 (2d Cir. 2021).

        Plaintiff submits five documents which he claims demonstrate that his lumbar

spine injuries were more serious than shown by the evidence before ALJ Griswold. [12-1] at 13-

18. The alleged new evidence consists of:

> -- A consultation report from nurse practitioner/pain management specialist Olia
> Golimowski dated September 16, 2024,[3] which includes a self-reported history of trauma
> to his back and knees and pain that "has gotten worse over the last 3 years". [12-2] at 2.
> Ms. Golimowski renewed plaintiff's Tramadol prescription and referred him for an X-ray
> of his lumbar spine. Id. at 3-4.

> -- A radiology report reviewing a CT scan dated September 20, 2024, which indicated
> "[a]dvanced lumbar spondylosis deformans extending [from] L2-3 through L5-S1 with
> disc height loss" and "multilevel spinal stenosis". Id. at 6-7.

> -- A neurophysiology report documenting the results of EMG and nerve conduction
> studies of plaintiff's lower extremities dated October 8, 2024, showing "chronic
> radiculopathy in the anterior lumbosacral myotomes in the lower limbs bilaterally" and
> "[d]istal symmetric sensory motor demyelinating peripheral polyneuropathy in both
> lower limbs". Id. at 8-19.

> -- X-ray results dated November 25, 2024, which showed "advanced degenerative lumbar
> spondylosis mainly at L4-5 and L5-S1 and to a lesser degree the L2-L3 and L3-L4
> levels". Id. at 20.

> -- MRI results dated March 25, 2025, which showed "significant clumping and
> redundancy of the cauda equina and nerve roots" and "[m]ultilevel advanced/severe
> central canal stenosis most pronounced [at] L3/L4 and L4/L5 with moderate stenoses of
> L2/L3 and L5/S1". Id. at 21-22.

---

[3]    While the date of Ms. Golimowski's report precedes the Appeals Council's decision by three
days, it is undisputed that the report was not before the Appeals Council when it made its decision. *See*
[12-1] at 18.

### 1.    New and Not Cumulative

I agree with plaintiff that these records are both new and not cumulative of what already exists in the administrative record. As these records were generated after the issuance of both ALJ Griswold and the Appeals Council's decisions, they are clearly new. *See* Anthony P.B. v. Commissioner of Social Security, 2021 WL 288769, *3 (W.D.N.Y. 2021) ("[e]vidence is 'new' if it did not exist prior to the ALJ's decision").

Further, while ALJ Griswold found that plaintiff had some "lumbar degenerative changes" (*see* [5] at 27), the imaging she reviewed was apparently "negative for any musculoskeletal complaints". Id. at 36. In contrast, the imaging reports sought to be introduced on appeal seem to objectively demonstrate the existence of musculoskeletal issues in plaintiff's lumbar spine. [12-2] at 6-22. The record before ALJ Griswold lacked records demonstrating treatment or imaging relating to such complaints. Thus, those reports are not cumulative of the evidence already in the record.

### 2.    Material and Probative

Plaintiff must also demonstrate that the new evidence is material and probative. *See* Tirado, 842 F.2d at 597. Material evidence is that which is "relevant to the claimant's condition during the time period for which benefits were denied". Id. Beyond that, there must be "a reasonable possibility that the new evidence would have influenced the [ALJ] to decide claimant's application differently". Id.

As plaintiff points out, the mere fact that such evidence was "generated after the ALJ rendered [her] decision . . . does not necessarily mean that it [would have] no bearing on the Commissioner's evaluation of [plaintiff's] claims". Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004). Rather, the Second Circuit has observed that "when . . . a diagnosis emerges after the

close of administrative proceedings that 'sheds considerable new light on the seriousness of a claimant's condition,' evidence of that diagnosis is material". Lisa v. Secretary of Department of Health and Human Services, 940 F.2d 40, 44 (2d Cir. 1991).

Here, ALJ Griswold determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his lumbar spine condition were inconsistent with his "conservative treatment history and [that] imaging has been negative for any musculoskeletal complaints". Id. at 36. She nonetheless found that plaintiff's morbid obesity presented some ambulatory and postural effects, for which she concluded a limitation to light work and a maximum of four hours of standing or walking (in addition to some environmental limitations) was appropriate. Id. She further concluded that these limitations adequately accommodated plaintiff's back pain. Id.

Based on these comments, it appears that ALJ Griswold placed significant weight on the lack of objective evidence for plaintiff's lumbar condition, a conclusion that is contradicted by the evidence which plaintiff now seeks to introduce. As such, there is a reasonable possibility that such evidence would have materially influenced her decision in that regard. See Williams v. Commissioner of Social Security, 236 F. App'x 641, 644 (2d Cir. 2007) ("[b]ecause the [imaging] report provides objective evidence of [plaintiff's] condition and because, in denying relief, the ALJ specifically pointed out that [plaintiff] had failed to have the procedure and indicated that there was insufficient evidence to support [plaintiff's] allegations . . . there is a reasonable possibility that the results could affect the ALJ's decision"); Lugo v. Berryhill, 390 F. Supp. 3d 453, 460-61 (S.D.N.Y. 2019) (remanding where "new evidence undercuts the stated rationale of the ALJ").

### 3.    Good Cause

While Social Security disability proceedings are non-adversarial, the claimant bears the ultimate burden to prove that he is under a disability. *See* McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). Accordingly, "a lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." Barry v. Colvin, 606 F. App'x 621, 622 (2d Cir. 2015).

For this reason, a plaintiff seeking to present new evidence on appeal "must show 'good cause' for failing to present the evidence earlier". Michael C. v. Commissioner of Social Security, 2025 WL 1891855, *6 (W.D.N.Y. 2025). "'Good cause' for failing to present evidence in a prior proceeding exists where . . . the evidence surfaces after the Secretary's final decision *and the claimant could not have obtained the evidence during the pendency of that proceeding*". Lisa, 940 F.2d at 44 (emphasis added).

The Second Circuit has held that "[t]o show good cause . . . [plaintiff] must go beyond showing that the proffered evidence did not exist during the pendency of the administrative proceeding". Id. at 45. That is, plaintiff must provide some explanation for why the evidence sought to be introduced could not have been procured earlier. *See* id. at 46 (finding that the retirement of plaintiff's treating physician was not a sufficient explanation for delay); *cf.* Williams v. Kijakazi, 2022 WL 17491008, *10 (S.D.N.Y. 2022) (finding good cause to introduce imaging where previously plaintiff's "workers' compensation refused to cover [it]").

Confusingly, the Second Circuit has also held that where "the new evidence submitted by [plaintiff] did not exist at the time of the ALJ's hearing, there is no question that the evidence is 'new' and that 'good cause' existed for her failure to submit this evidence to the

ALJ". Pollard, 377 F.3d at 193. This later-articulated version of the rule has been frequently cited with approval. *See, e.g.*, Ashley E. v. Commissioner of Social Security, 2023 WL 6217792, *6 (N.D.N.Y. 2023) ("there is good cause for plaintiff's failure to submit [post-decision medical records] because they did not exist at the time of administrative review"); Daniella A. v. Commissioner of Social Security, 2023 WL 155424, *4 (W.D.N.Y. 2023) (good cause satisfied where evidence "w[as] rendered shortly after the ALJ issued her decision").

However, as the Second Circuit has not overruled Lisa, its holding remains binding. *See generally* Doscher v. Sea Port Group Securities, LLC, 832 F.3d 372, 378 (2d Cir. 2016) ("[i]t is a longstanding rule of our Circuit that a three-judge panel is bound by a prior panel's decision until it is overruled either by this Court sitting *en banc* or by the Supreme Court"). Moreover, "[the Lisa holding] seems a better rule, as it is more in accord with congressional intent to discourage easy second bites at the apple and unending merry-go-rounds with no finality to administrative and judicial determinations". Smith v. Commissioner of Social Security, 2014 WL 3392336, *10 (N.D.N.Y. 2014); *see also* Colabufo v. Colvin, 2014 WL 2510559, *4 (N.D.N.Y. 2014) (applying Lisa rule).

Thus, to establish good cause, plaintiff was required to give an explanation as to why the proffered imaging could not have been procured during the pendency of his disability proceedings. He declined to do so. *See* [12-1] at 18. Therefore, I would generally be precluded from finding that the element of good cause is satisfied. *See* Colabufo, 2014 WL 2510559 at *4 ("[plaintiff] offers no explanation or reason why a forensic opinion from Dr. Schaeffer was not sought earlier. In absence thereof, a reviewing court cannot conclude that the third prong of the 'conjunctive threefold requirement' described above is met").

However, since this case will be remanded on other grounds, I would expect the Commissioner to incorporate and consider these documents going forward.

**C.      Did the ALJ properly assess plaintiff's standing limitations?**

Plaintiff argues that ALJ Griswold erred in substituting her own lay judgment for medical evidence regarding his standing limitations. [12-1] at 18-27. Specifically, he argues that ALJ Griswold's RFC finding that he could stand or walk for four hours in an eight-hour workday was improperly specific and insufficiently tethered to the medical evidence. Id. at 23.

It is well established that the ALJ, not any medical source, is responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2), 416.946(c), 416.927(d)(2); Curry v. Commissioner of Social Security, 855 F. App'x 46, 48 (2d Cir. 2021). As such, the RFC need "not perfectly correspond with any of the opinions of medical sources cited in [the] decision", and the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 F. App'x. 53, 56 (2d Cir. 2013); *see* Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022). Ultimately, "[t]he question is . . . whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (*quoting* Tricarico v. Colvin, 681 F. App'x 98, 101 (2d Cir. 2017)).

Here, the only functional medical evidence of record were the medical opinions of consultative examiner Dr. Dave and of the state agency consulting physicians, Dr. Lawrence and Dr. Brauer. Dr. Dave examined plaintiff and opined that he would have "moderate limitations" in standing and walking, and that his cane was not medically necessary. Id. at 401, 403. ALJ Griswold found Dr. Dave's opinion persuasive, finding it to be supported by her examination findings and consistent with the claimant's modest treatment history. Id. at 33. Drs. Lawrence

and Brauer reviewed the medical evidence and concluded that plaintiff retained the capacity to perform light work with only environmental limitations. Id. at 101-02, 120. ALJ Griswold found these opinions only partially persuasive, as she felt that standing limitations, among others, were also warranted. Id. at 36.

In her RFC determination, ALJ Griswold ultimately limited plaintiff to no more than four hours of standing or walking during an eight-hour workday. Id. at 30, 36. Such a finding is consistent with Dr. Dave's assessment of moderate limitations in those abilities. *See*, *e.g.*, Byron B. v. Commissioner of Social Security, 2021 WL 4803632, *6 (W.D.N.Y. 2021) ("the RFC's limitation to light work with no more than four hours of walking properly incorporates Dr. Liu's assessment of moderate limitations in prolonged walking").

To the extent plaintiff argues that the limitation in the RFC was greater than what was supported by the medical opinion evidence, that is no basis for remand. *See* Ramsey v. Commissioner of Social Security, 830 F. App'x 37, 39 (2d Cir. 2020) ("[while] the ALJ occasionally deviated from consultative examiners' recommendations to *decrease* Ramsey's RFC based on other evidence in the record, . . . [t]he ALJ committed no error"); Robert L. v. Commissioner of Social Security, 2023 WL 5037925, *3 (W.D.N.Y. 2023) ("the ALJ certainly did not err by concluding that Robert was *more* restricted than Dr. Santarpia found him to be") (emphasis in originals).

Conversely, to the extent plaintiff argues that the RFC should have included greater limitations, he fails to meet his burden. "Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." Beaman v. Commissioner of Social Security, 2020 WL 473618, *6 (W.D.N.Y. 2020). Here, the record is devoid of any medical evidence demonstrating greater limitations than assessed by ALJ Griswold.

**D.    Did the ALJ properly evaluate mental health counselor Daunce's opinion?**

Plaintiff argues that ALJ Griswold failed to "properly evaluate" Ms. Daunce's mental health questionnaires, who had a year-and-a-half treating history with plaintiff, and improperly relied on the opinion of consultative examiner Dr. Santarpia. [12-1] at 27-32.

Under the applicable post-2017 Social Security regulations, Ms. Daunce, as a licensed mental health counselor, is indeed considered a medical source. *See* Malcolm C. v. Commissioner of Social Security, 801 F. Supp. 3d 175, 182 (W.D.N.Y. 2025); David F. v. Commissioner of Social Security, 2022 WL 10510389, *2 (W.D.N.Y. 2022) ("licensed mental health counselors and licensed clinical social workers are considered medical sources under [the regulatory] definition, and the ALJ therefore must consider [their] opinions consistent with the requirements"); *see generally* 20 C.F.R. §416.902(i) ("[m]edical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law").

The regulations dictate that "[the ALJ] will articulate . . . how persuasive [he] find[s] all of the medical opinions . . . in [claimant's] case record". 20 C.F.R. §416.920c(b). In so doing, "the ALJ must explain how he considered the 'supportability' and 'consistency' factors", and "may—but is not required to" discuss the other factors listed in §416.920c, such as the relationship with the claimant, specialization, or familiarity with program requirements. David C. v. Commissioner of Social Security, 2024 WL 376598, *4 (W.D.N.Y. 2024); *see* §416.920c(a)-(c).

Here, ALJ Griswold did so, reviewing Ms. Daunce's questionnaire responses, acknowledging the length of treatment, but nonetheless finding Daunce's opinion to be unsupported by the evidence of record, plaintiff's treatment history, conservative care, and lack

of serious symptomology. [5] at 35. She also found Ms. Daunce's opinions to be inconsistent with Dr. Santarpia's report. Id.

While "the regulations still recognize the 'foundational nature' of the observations of treating sources" (Jacqueline L. v. Commissioner of Social Security, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (citations omitted)), the Commissioner "will [no longer] defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources". 20 C.F.R. §416.920c(a); see Daniel T. v. Commissioner of Social Security, 2024 WL 4181822, *5 (W.D.N.Y. 2024).

Accordingly, "[t]he ALJ is permitted to discount the opinion of a treating [source] if it is inconsistent with other substantial evidence". Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022). Along the same lines, "an ALJ may credit [a consultative examiner's] opinion over opinions from treating sources" when the former is more consistent with the record. Ashley P. v. Commissioner of Social Security, 2023 WL 4746350, *8 (W.D.N.Y. 2023). While plaintiff takes issue with the sufficiency of ALJ Griswold's supportability and consistency analysis, "the ALJ is not required to identify 'overwhelming evidence' inconsistent with a medical opinion . . .  to find that opinion unpersuasive". Blanford v. Dudek, 2025 WL 1288082, *2 (2d Cir. 2025).

**E.**     **Did the ALJ improperly assess plaintiff's mental limitations?**

Finally, plaintiff argues that ALJ Griswold erred by departing from the expert opinion evidence of record in crafting certain mental components of the RFC. [12-1] at 33-37. On this count, I agree with plaintiff.

First, ALJ Griswold rejected the substantial mental limitations as opined by Ms. Daunce, as well as the negligible limitations opined by the state agency psychologists. [5] at 35,

37. She then found the opinion of consultative examiner Dr. Santarpia, which included mild-to-moderate limitations in regulating emotion, controlling behavior, and maintaining well-being, to be "partially persuasive". Id. at 32, 398. However, she felt that more limitations were warranted than were included in Dr. Santarpia's opinion, specifically, limitations to simple tasks, simple feedback, simple changes, and no interaction with the general public or teamwork. Id. at 32.

It is clearly within the ALJ's purview to reject or discount any opinion evidence that she finds to be unsupported by the record. *See, e.g.*, Kimberly H. v. Commissioner of Social Security, 671 F. Supp. 3d 328, 335 (W.D.N.Y. 2023) ("[a]n ALJ may reject the portions of a medical opinion that are inconsistent with the evidence of record"). However, in diverging from the expert opinions on both sides, she staked her RFC determination in the precarious middle ground between them. Courts have long considered such attempts to "split the difference" between medical opinions to be problematic, at least without basing such a finding upon specific functional evidence in the record. *See, e.g.*, Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014); Kelly W. v. Commissioner of Social Security, 2022 WL 600838, *4 (W.D.N.Y. 2022).

To be clear, "an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation". Tiffany L. v. Commissioner of Social Security, 2021 WL 3145694, *4 (W.D.N.Y. 2021); *see also* Barry J. v. Commissioner of Social Security, 725 F. Supp. 3d 312, 323-24 (W.D.N.Y. 2024) (citing cases). It is not necessary that every limitation in the RFC be directly traceable to a medical opinion, as long as there is substantive evidence in support of that limitation. *See* Cook v. Commissioner of Social Security, 818 F. App'x 108, 109 (2d Cir. 2020) ("'although there was no medical opinion providing the specific restrictions reflected in the

ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity'").

Here, it is unclear where these specific limitations come from. ALJ Griswold rejected Ms. Daunce's opined limitations as being inconsistent with those opined by Dr. Santarpia. [5] at 35. However, she also concluded that Dr. Santarpia's opined limitations were insufficient. Id. at 32. As those limitations clearly do not come from the opinion evidence, the ALJ was required to explain her bases for assessing them. *See*, *e.g.*, George H. v. Commissioner of Social Security, 2023 WL 2595005, *2 (W.D.N.Y. 2023) ("where an ALJ includes a highly specific durational limitation and exertional capacity, he must have an evidentiary basis for the chosen duration and capacity, [such as a] medical opinion, a claimant's testimony, or information contained in the medical records"). She did not.

"Remand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review". Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013). In this case, "[w]ithout a 'tether' between the specific limitation and the medical record, this Court cannot perform its required meaningful review of the ALJ's decision". Kimberly R. v. Commissioner of Social Security, 2022 WL 17584196, *2 (W.D.N.Y. 2022). Having reviewed ALJ Griswold's Decision as a whole, I am unable to discern what was the intended "tether" connecting the additional mental limitations to the evidence. Therefore, remand is required.

**CONCLUSION**

For these reasons, plaintiff's motion for judgment on the pleadings [12] is granted to the extent it seeks vacatur and remand, the Commissioner's motion for judgment on the

-18-

-19-

pleadings [15] is denied, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion.

**SO ORDERED**.

Dated: July 13, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge